

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2122 | **DATE** | 10/22/2003 |
| **CASE TITLE** | CHARLES WILLIAMS, et al vs. TEAMSTERS LOCAL UNION NO. 727 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Both the union's and trustees' motions for partial dismissal are granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | OCT 2 3 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 22 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 03 OCT 22 PM 6:17 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 03 C 2122 |
| | ) | |
| TEAMSTERS LOCAL UNION NO. 727, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OCT 2 3 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs Charles and Lynne Williams, and their minor children, brought this action against Teamster Local Union No. 727 (the union) and the trustees of the union's health, welfare and pension funds (the funds). Plaintiff Charles Williams (Williams) alleges breach of duty of fair representation against the union (Claim I), while all plaintiffs seek declaratory relief and other damages against the trustees on the basis of equitable estoppel for the denial of benefits from the funds (Counts II-V), and failure to provide COBRA notification (Claims VI-IX). The union filed a motion for partial dismissal of Claim I and the trustees filed a motion for partial dismissal of Claims II-IX. Both motions are granted.

## BACKGROUND

Plaintiff Williams was a member of the union from 1983 until January 23, 2003, who, along with his wife Lynne and their three children, Laura, Kevin, and Jack, received benefits from the union's funds. The funds' plan documents limit eligibility for benefits to employees in a union collective bargaining unit of a contributing employer. Williams was employed for several years by Drechsler Brown Funeral Home in Oak Park, Illinois, before purchasing the

funeral home on April 1, 1998. Despite Williams' change of status from employee to owner-operator of the funeral home, he continued to pay union dues, insurance premiums and pension contributions, and, in return, he and his family continued to receive fund benefits.

Once Williams became owner of the funeral home, the union asked him to sign a multi-employer funeral director bargaining agreement. Williams, who had no employees, refused to sign the agreement on several occasions. As a result of Williams' refusal to sign the agreement, the union and the trustees threatened to terminate plaintiffs' fund benefits and Williams' union membership. On July 30, 2002, the union refused to accept Williams' payment for his health insurance premium and pension contribution. The union and the trustees terminated plaintiffs' health care and pension benefits on October 8, 2002, and a few weeks later issued a COBRA notice pursuant to 29 U.S.C. § 1166. In November 2002, defendants withdrew the COBRA notice, stating that the notification was an error and that no qualifying event had triggered the availability of COBRA coverage.

Plaintiffs Charles and Lynne Williams have been unable to obtain new medical coverage for Laura Williams, who suffers from nephrotic syndrome, and were unable to insure Jack Williams, their newborn son until he was two months old. Plaintiffs have also been unable to exercise their rights under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), allegedly due to the lack of COBRA notification.

## DISCUSSION

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). In deciding a motion to dismiss, the court must assume the truth of all well-pleaded allegations, making all inferences in the plaintiff's favor. Sidney S. Arst Co. v.

Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### Claim I: Breach of Duty of Fair Representation

In Claim I, plaintiff Williams alleges that the union breached its duty of fair representation by terminating his membership because he refused to sign a bargaining agreement. Williams states that the union has maintained the memberships of other business owners who signed the bargaining agreement. He further alleges that the union's own constitution and collective bargaining agreement permit funeral home owners to be members.

In its motion for partial dismissal, the union argues that Williams fails to state a claim for breach of duty of fair representation because the allegations in his amended complaint reveal that the union did not owe Williams a duty. The union asserts that a duty of fair representation arises not from union membership, but only from an exclusive collective bargaining relationship, and that by Williams' own admission the union no longer represented him once he became the owner, rather than an employee, of the funeral home. We agree that the union did not owe Williams a duty of fair representation.

In Toth v. USX Corp., 693 F.Supp. 693, 700 (N.D.Ill. 1988), Judge Bua stated, "The law has long been settled that a union owes a statutory duty of fair representation only to those employees for whom the union serves as exclusive representative." *Citing* Schneider Moving & Storage v. Robbins, 466 U.S. 364, 376 n.22 (1984); Vaca v. Sipes, 386 U.S. 171, 177, 180 (1967). The union's duty to fairly represent those employees extends only to those matters for which the union serves as the employee's exclusive bargaining agent. Freeman v. Local Union No. 135, 746 F.2d 1316, 1320-21 (7th Cir. 1984).

The union did not serve as the exclusive bargaining agent for Williams on any matter at the time his membership was terminated. As the amended complaint states, Williams was no longer an employee, nor was he the member of any collective bargaining unit represented by the union. Since the union did not represent Williams as a member of any collective bargaining unit, it did not owe Williams a duty of fair representation.

Williams argues that the union's constitution and collective bargaining agreement evidence its duty to fairly represent him. The constitution opens union membership to "workers ... without limitation" and the collective bargaining agreement grants funeral home owners membership when they perform work for a home or corporation other than their own. These provisions do not impose a duty of fair representation, for mere membership in a union does not give rise to this duty.

Williams cites <u>Retana v. Apartment, Motel, Hotel and Elevator Operators Union</u>, 453 F.2d 1018 (9th Cir. 1972), in support of his contention that the union owes him a duty of fair representation. In <u>Retana</u> a Spanish-speaking former hotel employee represented by a union brought a claim that the union did not fairly represent her and other Spanish-speaking employees during the negotiation and administration of a collective bargaining agreement. The court denied a motion to dismiss the claim, finding that the duty of fair representation applies not just to breaches of specific provisions of the collective bargaining agreement, but also to union actions that "'concern' matters related to the negotiation or administration of the collective bargaining agreements . . . ." <u>Id.</u> at 1023. Unlike Williams, the plaintiff in <u>Retana</u> sufficiently pleaded a breach of duty of fair representation because the union was her exclusive bargaining agent for the collective bargaining agreement, thus she was owed a duty of fair representation.

### Claims II-V: Equitable Estoppel Under ERISA

In Claims II-V, the Williams family members allege that defendant trustees breached their fiduciary duty to plaintiffs by causing them to detrimentally rely on the trustees' written confirmation that they were to receive health care and pension benefits. Plaintiffs state that their reliance on the trustees' conduct and written statements led to plaintiffs' good faith belief that they would continue to receive health and pension benefits as long as Williams continued to pay union dues and fund premiums. Plaintiffs seek to estop the trustees from denying them fund benefits.

In their motion for partial dismissal, the trustees argue that the amended complaint fails to state a claim because the Seventh Circuit has expressly declined to extend a cause of action for equitable estoppel against funded multi-employer benefit plans, and the amended complaint fails to allege the required elements of equitable estoppel. In Davis v. Combes, 294 F.3d 931 (7th Cir. 2002), the Seventh Circuit did not reach the question of whether equitable estoppel actions apply to ERISA plans other than unfunded single-employer welfare benefit plans, because it found that the plaintiff failed to establish the four elements of equitable estoppel. Likewise, in this case, plaintiffs failed to plead the required elements of equitable estoppel, so we need not address the trustees' first argument.

To survive a motion to dismiss a claim of equitable estoppel, plaintiffs must plead "(1) a knowing misrepresentation by the defendants; (2) in writing; (3) with reasonable reliance by the plaintiff on the misrepresentation; and (4) to the plaintiff's detriment." Id. at 939. In their amended complaint plaintiffs allege that the trustees misled them to believe they would continue to receive fund benefits as long as they paid their dues by accepting Williams' union dues and fund payments for over four years after he became owner of the funeral home, confirming those

payments with a monthly statement, and providing him with the benefits of membership. None of these allegations amount to a knowing misrepresentation in writing by defendants.

The only written documents, the monthly statements, did not make any representation regarding plaintiffs' eligibility for continued benefits. Plaintiffs acknowledge in their amended complaint that the funds' plan documents limit eligibility for benefits to "employee[s] in a Teamsters Local Union No. 727 collective bargaining unit of a contributing employer." Plaintiffs do not allege any written misrepresentations by the trustees that could reasonably cause them to believe that they were entitled to benefits for as long as they chose to enroll. The mere fact that plaintiffs received these monthly statements as evidence of their continued enrollment in the funds after their eligibility had ended did not constitute a knowing misrepresentation that they could now receive benefits as long as they wanted, despite the language of the funds' plan documents. In their own response to the trustees' motion for partial dismissal, plaintiffs acknowledge that they did not expect benefits forever, but, rather, they expected to receive COBRA notification when the benefits were finally cancelled.

Claims VI-IX: Estoppel Under COBRA

In Claims VI-IX, plaintiffs allege that the trustees refused to issue Williams a COBRA notice in violation of 29 U.S.C. § 1166. Plaintiffs maintain that Williams' termination of employment when he became owner-operator of the funeral home was a qualifying event triggering the trustees' obligation to provide him with COBRA notification. They allege that as a result of the trustees' failure to provide COBRA notification, plaintiffs were unable to secure rights under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Plaintiffs seek to estop the trustees from denying them COBRA notification and seek a restoration of their health benefits, so that they may be eligible for benefits under HIPAA.

The trustees argue that plaintiffs fail to state a claim because no qualifying event triggered an obligation to provide plaintiffs with COBRA notification and plaintiffs did not plead the required elements of equitable estoppel. We agree that plaintiffs did not allege a qualifying event that mandates COBRA notification.

Section 29 U.S.C. 1163 defines a "qualifying event" as "any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary...." One of the events listed is "[t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours of the covered employee's employment." 29 U.S.C. § 1163(2). While Williams' employment did terminate when he became owner of the funeral home, this did not result in a loss of coverage for the plaintiffs. As the plaintiffs state in their amended complaint, after Williams' loss of employment they continued to receive benefits for over four years. In Fenner v. Favorite Brands Int'l, Inc., 1998 WL 249232 at *5 (N.D.Ill. 1998), Judge Gettleman stated that "a termination that does not result in a loss of coverage does not constitute a qualifying event and does not trigger the notice requirements of § 1166." This interpretation of the law is further supported by regulations of the Internal Revenue Service, which find no COBRA qualifying event "if neither the covered employee nor the spouse or a dependent child of the covered employee loses coverage before the end of what would be the maximum coverage period...." 26 C.F.R. § 54.4980B-4. The plaintiffs' coverage continued long after the 18-month period of COBRA coverage would have expired following Williams' termination of employment.

The plaintiffs argue that the IRS and Judge Gettleman have strayed from the plain language of 29 U.S.C. § 1163, which defines a "qualifying event." Plaintiffs point out that subparagraph 2, which identifies termination of employment as a qualifying event, does not

address the status of benefits coverage. However, § 1163's opening paragraph, which modifies subparagraphs 2-6, does address the status of benefits coverage, limiting qualifying events to those events for which there would be loss of health insurance but for the provision of COBRA coverage. In plaintiffs' case there was no loss of coverage until over four years after the termination of employment.

Plaintiffs' argument regarding damages also fails. They argue that the trustees' refusal to provide COBRA notification resulted in their inability to exercise their HIPAA rights. Under HIPAA health insurers may not exclude an individual with a preexisting condition if he has 18 months of creditable coverage with a prior insurer and has not gone without insurance for more than 63 days. 29 U.S.C. § 1181. An individual proves his eligibility with a certificate that lists the duration of creditable coverage and the date on which coverage ended. HIPAA provisions make clear that COBRA coverage is not required to benefit from HIPAA and that the certificate of creditable coverage is distinct from COBRA notification. Section 29 U.S.C. § 1181(e)(1)(A)(i) notes that a group health plan shall provide a certificate of creditable coverage when an individual ceases to be covered *or* becomes covered under a COBRA continuation provision, and section 29 U.S.C. § 1181(e)(1)(B)(i) requires that the certificate of creditable coverage include "the period of creditable coverage of the individual under [his insurance] plan and the coverage (if any) under such COBRA continuation provision." These sections illustrate that an individual exercising his HIPAA rights may receive COBRA continuation benefits. COBRA benefits are not, however, a prerequisite to HIPAA rights. Williams could have exercised his family's HIPAA rights by obtaining a certificate of creditable coverage (which he had a right to receive from his former insurer upon request up to 24 months after the family's benefits ended, *see* 29 U.S.C. § 1181(e)(1)(A)(iii)), and seeking out new health

care coverage within 63 days of the termination of their union benefits. Thus, the trustees' refusal to provide COBRA notification to Williams did not impede the plaintiffs from exercising their HIPAA rights.

While it is certainly regrettable that Laura Williams has been unable to obtain health care coverage since the discontinuation of the family's union fund benefits, plaintiffs have not pleaded actionable claims against defendants.

## CONCLUSION

For the foregoing reasons, both the union's and the trustees' motions for partial dismissal are granted.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 22, 2003.